UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSWAL ORTIZ,

                        Petitioner,

        v.

LAURA HERMOSILLO, et al.,

                        Respondents.

CASE NO. 2:26-cv-00384-TL

ORDER ON AMENDED PETITION
FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Oswal Ortiz's Amended Petition for Writ of Habeas Corpus ("Habeas Petition"). Dkt. No. 5. Respondents are Laura Hermosillo, Seattle Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); Kristi Noem, Secretary, United States Department of Homeland Security ("DHS"); Pamela Bondi, United States Attorney General; and DHS. Having considered the petition,

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 1

Respondents' return[1] (Dkt. No. 11), Petitioner's traverse (Dkt. No. 14),[2] and the relevant record, the Court GRANTS the petition and ORDERS Petitioner's release.

## I.    BACKGROUND

Petitioner is a citizen of Venezuela who arrived in the United States on September 11, 2023, without being admitted or paroled. Dkt. No. 11 at 3; *see also* Dkt. No. 13 (Soraghan Decl.) ¶ 3. On the day Petitioner entered the United States, Border Patrol Officers encountered and arrested him. Dkt. No. 13 ¶ 4. On September 13, 2023, after two nights in detention (Dkt. No. 6 (Ortiz Decl.) ¶ 9), Petitioner was served with a Notice to Appear ("NTA"), charging him under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States who has not been admitted or paroled" (Dkt. No. 7-1 (NTA) at 2). Following his arrest and two nights in detention, Petitioner was released on an Order of Release on Recognizance ("OREC"), which allowed him to remain at liberty pending his immigration proceedings, while subject to conditions of release, including, among others, reporting to the DHS Office and not violating any "local, State, or Federal laws or ordinances." Dkt. No. 12-1 (OREC) at 2. The OREC states that the actions were taken pursuant to Section 236 of the INA, 8 U.S.C. § 1226. *Id*. (stating Petitioner was being released "[i]n accordance with section 236 of the Immigration and Nationality Act"). On December 30, 2023, Petitioner filed an application for asylum, withholding, and relief under the Convention Against Torture. Dkt. No. 6 ¶ 12. Petitioner also applied for work authorization and was approved. *Id*. ¶ 13.

//

//

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the Habeas Petition and has not appeared in this case.

[2] Petitioner withdrew Count II of the Habeas Petition in his traverse. *See* Dkt. No. 14 at 4.

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 2

While released on his OREC, Petitioner never missed a hearing date, complied with all of his ICE check-ins, and moved into his own apartment. *Id*. ¶¶ 14, 21. But on September 6, 2024, Petitioner was arrested by the Tukwila Police Department and charged in King County Superior Court with Assault 2nd Degree.[3] *Id*. ¶ 16. After Petitioner's criminal charge, ICE increased his in-person check-ins from once every six months to once a month. *Id*. ¶¶ 15, 20. Petitioner reported once a month from September 2024 to October 2025. *Id*. ¶ 20. On October 15, 2025, Petitioner reported in person to the ICE ERO Office. Dkt. No. 11 at 3. ICE agents brought Petitioner into a private room, questioned him, took him into custody, and brought him to the NWIPC, where he has been held ever since. Dkt. No. 6 ¶¶ 7, 22–26. Respondents assert that ICE took Petitioner into custody due to his criminal charge, which Respondents assert is a violation of Petitioner's OREC. Dkt. No. 11 at 3. A little over two months later on December 16, 2025, Petitioner appeared for a hearing before an immigration judge ("IJ"), which was continued. *Id*. at 4. Eventually, on January 22, 2026, Petitioner appeared for a bond hearing in front of an IJ, at which the IJ found that Petitioner is subject to mandatory detention. *Id*. at 4. Petitioner filed the instant habeas petition on February 9, 2026. Dkt. No. 5.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3).

---

[3] *See infra* Section III.B.2.

### III.    DISCUSSION

Although Petitioner does not assert under which statute he is held, he asserts that his detention is in violation of the Due Process Clause of the Fifth Amendment. *See* Dkt. No. 5 ¶¶ 46, 52. Respondents assert that Petitioner's detention is lawful and mandatory pursuant to 8 U.S.C. § 1225(b) and that Petitioner's detention does not violate due process. *See generally* Dkt. No. 11. As such, the Court will proceed with its analysis assuming, *arguendo*, that Petitioner is detained pursuant to Section 1225(b).

### A.    Legal Framework

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test to determine whether an administrative procedure provides the process constitutionally due. The Court considers the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Sarwari v. Wamsley*, No. C26-121, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Petitioner argues that the *Mathews* test applies to his case and compels a finding that due process required that he be given notice and an opportunity to respond *before* he was deprived of his liberty. Dkt. No. 5 ¶¶ 46, 52. Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b), that Respondents prevail on the *Mathews* analysis, and that Petitioner was not entitled to any pre-deprivation process. *See generally* Dkt. No. 11. Consistent with persuasive authority and the arguments of the Parties, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements. However, first, the Court will address Respondents' argument that they have a lawful basis to detain Petitioner.

**B.      Relevance of the Basis for Petitioner's Detention**

As a preliminary matter, the Court need not consider whether there is a statutory basis, as Respondents allege, upon which Petitioner might be lawfully detained. "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025). The habeas petition before the Court is not directed at Respondents' classification of Petitioner, but rather that Respondents' conduct violates Petitioner's Fifth Amendment right to due process. *See generally* Dkt. No. 5. As to the merits of this petition, then, Respondents' arguments regarding their authority to detain Petitioner are neither here nor there, and the Court need not consider them. *See, e.g.*, *Chavarria v. Chestnut*, No. C25-1755, 2025 WL 3533606, at *5 n.3 (E.D. Cal. Dec. 9, 2025) (declining to address respondents' arguments pertaining to mandatory detention after determining petitioner had been released under § 1182(d)(5)(A) and was likely to succeed on merits of due process claim).

**C.      The *Mathews* Factors**

The Court will now turn to the *Mathews* factors.

**1.      Petitioner Has a Considerable Private Interest in His Liberty**

As in *Rodriguez Diaz*, one of the cases Respondents rely on, "the government for its part does not seriously dispute that [Petitioner] has a legitimate and reasonably strong private liberty interest under *Mathews*." 53 F.4th at 1207. The *Rodriguez Diaz* court acknowledged that "a detained person's liberty interest is substantial." *Id.* at 1199. Respondents recognize Petitioner's "weighty liberty interest[]" (Dkt. No. 11 at 5 (quoting *Reyes v. King*, No. C19-8674, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)), but counter that noncitizens, and particularly noncitizens in certain types of removal proceedings, have lesser liberty interests than citizens (*id.*

at 5–6), and that "the Supreme Court has 'repeatedly recognized [that] detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process'" (*id.* at 6 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003))). Neither of these assertions sways the Court in its *Mathews* analysis. Petitioner does not contend that his liberty interests are equivalent to those of a citizen, nor does he challenge the constitutionality of immigration detention *per se*. Instead, he asserts, correctly, that the Constitution protects his liberty interests by requiring due process prior to a deprivation of his liberty. *See generally* Dkt. No. 5.

Further, the Supreme Court has also recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). This is true even in the immigration context, including the deportation process. *Zadvydas*, 533 U.S. at 696 (holding that a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). That the Government exercises discretion in setting conditions of release does not eliminate the protections afforded to Petitioner's liberty interest. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").

When he was released from initial detention on his own recognizance, Petitioner acquired a liberty interest entitled to the protections of the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Petitioner has exhibited a reasonable reliance on his liberty through his actions over a two-year period, including: applying for and being

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 7

approved for work authorization; moving into his own apartment; and building relationships within the community. *See* Dkt. No. 6 ¶¶ 12–14, 21. Petitioner can only engage in these actions—the actions that make up his life—while free.

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

### 2.    The Risk of Erroneous Deprivation of Liberty is High

Respondents argue that "the risk of a constitutionally significant and erroneous deprivation of Petitioner's liberty did not necessitate a pre-deprivation hearing," because "[a] pre-deprivation hearing would be futile as his detention is based on his mandatory detention." Dkt. No. 11 at 6. These are arguments the Court has already addressed. *See supra* Section III.B.

Respondents also assert that even if an analysis of Petitioner's dangerousness or flight risk were relevant, ICE had a basis to revoke Petitioner's OREC based on his arrest. Dkt. No. 11 at 6. But Respondents do not dispute the fact that after learning of his arrest on the assault charge, Respondents only increased the frequency of his in-person check-ins (*see* Dkt. No. 6 ¶¶ 15, 20; *see generally* Dkt. No. 11), reflecting a decision by Respondent's agents that he was not dangerous or a risk of flight. It is also undisputed that Petitioner was not provided advance notice of his re-detention, he showed up to what he expected would be one of his routine ICE check-ins, and he was arrested. *See* Dkt. No. 6 ¶¶ 7, 22–26; *see generally* Dkt. No. 11. As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")). Therefore, the Court finds

that the risk of erroneous deprivation of liberty is high, and the second *Mathews* factor weighs in favor of Petitioner.

### 3.     Respondents' Interest in Re-Detention Without Hearing Is Minimal

The countervailing governmental interest in Petitioner's re-detention is minimal.

Respondents argue that there is a "heightened government interest in the immigration detention context" and in preventing noncitizens "from remaining in the United States in violation of our law." Dkt. No. 11 at 6 (citation modified). But those interests are not threatened if a pre-deprivation hearing is required. Additionally, Respondents assert that "an analysis of Petitioner's dangerousness or flight risk is not relevant" (*id.*), further undermining any suggestion that Respondents' interests must be satisfied immediately.

Further, Respondents argue that it "has an interest in protecting immigration proceedings from unnecessary delay." *Id*. But as Petitioner notes, "[i]mmigration court custody hearings are routine and, in this case, does [*sic*] not present any significant delay in the Government's efforts to remove Mr. Ortiz." Dkt. No. 5 ¶ 55. Although providing Petitioner with a hearing before re-detaining him would naturally have required some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without a pre-detention hearing violated his rights under the Fifth Amendment to the United States Constitution.

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 9

**D.      Injunctive Relief**

In addition to his release, Petitioner requests that "Respondent's [*sic*] be permanently enjoined from re-detaining Mr. Ortiz absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that his [*sic*] is a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 5 ¶ 56. Petitioner goes on to specify that he "is not requesting a blanket prohibition of re-detention under all circumstances but instead specifically request that the Respondent's [*sic*] be enjoined from re-detaining Mr. Ortiz in a same or similar manner as they have in this underlying habeas case." *Id*. ¶ 58. The Petition includes a section dedicated to Petitioner's request for injunctive relief. *Id.* ¶¶ 56–61. In response, Respondents include a single sentence in their return memorandum: "As described below, the facts in this situation do not support a blanket requirement of written notice and a hearing prior to Petitioner's detention." Dkt. No. 11 at 5. The Court disagrees.

**1.      Injunctive Relief is Needed**

A party seeking a permanent injunction "must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)). Petitioner demonstrates that that there exists some cognizable danger of recurrent violation.

Petitioner chronicles the various other cases in which courts in this District have ordered the release of similarly situated petitioners because they were re-detained in violation of due process. Dkt. No. 5 ¶¶ 58–61; Dkt. No. 14 at 14–15. As noted by Petitioner, Respondents have been on notice in this District since at least August 19, 2025, that re-detaining individuals who

originally had been detained at the border and then released without notice and an opportunity to be heard violates the Fifth Amendment's Due Process clause. *See E.A. T.-B*, 795 F. Supp. 3d at 1324 (finding that petitioner's re-detention without notice or opportunity to be heard violated due process). Since that time, Respondents have continued to re-detain petitioners in this District without due process on at least ten occasions—actions that continue despite many court orders finding that these actions violate due process. Consequently, this convinces the Court that, absent a court order, this type of deprivation can and may recur again to Petitioner. *See e.g. G.S. v. Hermosillo*, No. C25-2704, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026) (finding that petitioner's re-detention on December 9, 2025, without notice or opportunity to be heard, violated due process); *Petrov v. Hermosillo*, C25-2647, 2026 WL 98761, at *4 (W.D. Wash. Jan. 14, 2026) (same, petitioner re-detained on December 11, 2025); *Shinwari v. Hermosillo*, No. C26-9, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (same, petitioners re-detained in December 2025); *Singh v. Noem*, No. C26-79, 2026 WL 265670, at *6 (W.D. Wash. Feb. 2, 2026) (same, petitioner re-detained on December 10, 2025); *Herrera Gomez v. Wamsley*, No. C25-2642, 2026 WL 279966, at *3 (W.D. Wash. Feb. 3, 2026) (same, petitioner re-detained on December 12, 2025); *Sarwari*, 2026 WL 279968, at *8 (W.D. Wash. Feb. 3, 2026) (same, petitioner re-detained on December 25, 2025); *G.R.R. v. Hermosillo*, No. C26-97, 2026 WL 395268, at *6 (W.D. Wash. Feb. 12, 2026) (same, petitioner re-detained on October 1, 2025); *Dieng v. Hermosillo*, No. C26-190, 2026 WL 411857, at *7–8 (W.D. Wash. Feb. 13, 2026) (same, petitioner re-detained on January 16, 2026); *Rana v. Bondi*, No. C26-244, 2026 WL 472800, at *5 (W.D. Wash. Feb. 19, 2026) (same, petitioner re-detained on November 8, 2025); *Arreaga Morales de Putul v. Hermosillo*, No. C26-129, 2026 WL 468637, at *3 (W.D. Wash. Feb. 19, 2026) (same, petitioner re-detained on December 19, 2025). Respondents' actions in the face of the *E.A.T.B.* order and all the other orders in this District that have found violations of

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 11

due process under similar circumstances since August 2025 "make clear that [Respondents'] current practices for re-detention contravene, and will continue to contravene, the constitutional principles espoused in this Order and in other court orders issued in this District." *Silva v. Hermosillo*, No. C26-179, 2026 WL 445003, at *6 (W.D. Wash. Feb. 17, 2026).

While Respondents have complied with the orders granting habeas relief in this District as far as this Court is aware, this still potentially leaves Petitioner with future relief that will be too little and too late. *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Domingo v. Kaiser*, 2025 WL 1940179, at *3. Therefore, Petitioner is left with no choice but to make an explicit request that he not be re-detained without notice and a hearing—a right that "he can [only] enforce . . . bringing a challenge now, prior to being re-arrested." *Ortega v. Bonnar*, 415 Supp. 3d at 969. Therefore, the Court finds that Petitioner's circumstances, in conjunction with the history of habeas orders in this District (and, indeed, nationwide), support Petitioner's assertion that there exists some cognizable danger of recurrent violation, and not simply a mere possibility his rights could be violated in a similar way yet again.

**2.      Petitioner Demonstrates the Elements Required to Obtain Injunctive Relief**

A plaintiff or petitioner "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Under the first *eBay* prong, it is unquestionable that Petitioner has demonstrated he has suffered irreparable injury. Petitioner has shown that he was detained in violation of due process—a detention that has lasted for over 16 months. "It is well established that the

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 12

deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

By demonstrating that his detention violates due process, Petitioner also meets the second *eBay* prong that remedies available at law, such as monetary damages, are inadequate to compensate for his injury. *See id.* at 999 (observing that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages.").

The third and fourth *eBay* prongs merge when the Government is the party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner has demonstrated that both prongs weigh in his favor. Petitioner rightfully argues that any re-detention hearing is routine and that, in this case, providing notice and a pre-detention hearing "does not present any significant delay in the Government's efforts to remove Mr. Ortiz." Dkt. No. 5 ¶ 55. Respondents do not dispute these assertions. Further, as the Court stated, the costs of a hearing are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See, e.g., Ortega*, 415 F. Supp. at 970 ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Additionally, Petitioner has demonstrated that not only his due process rights have been violated through Respondents' re-detention procedures, but also the rights of many other similarly situation petitioners in this District, despite multiple court orders releasing petitioners for being re-detained in violation of due process. *See* Dkt. No. 5 ¶ 58, 60. Ordering Respondents to not re-detain noncitizens without due process does not create a disservice to the greater public; in fact, it reinforces constitutional rights. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); (*see also Jorge M.F. v. Wilkinson*, No. C21-1434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("[T]he public has a strong interest in upholding

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 13

procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.") (citation modified)). Accordingly, the balance of hardships and public interest weigh in Petitioner's favor.

*    *    *

In total, Petitioner has met the standard for a permanent injunction. Accordingly, the Court grants Petitioner's request that Respondents not re-detain Petitioner without proper notice and a pre-detention hearing unless permissible under an applicable statute or federal regulation. However, Petitioner also requests the evidentiary standard at that hearing be clear and convincing. Petitioner cites no authority for that standard; therefore, the Court declines to adopt that request. *See Herrera Gomez*, 2026 WL 279966, at *4.

**E.      Declaration**

For the reasons stated in Section III.C, the Court declares that Petitioner's detention without an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment. "When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008).

<strong>IV.    CONCLUSION</strong>

For the foregoing reasons, the Court finds that Petitioner is in custody in violation of the Constitution of the United States. Accordingly, it is hereby ORDERED:

(1)      The Petition for a Writ of Habeas Corpus (Dkt. No. 5) is GRANTED.

(2)      Respondents SHALL release Petitioner from detention immediately, pursuant to the conditions in his preexisting Order of Release on Recognizance;

(3)      Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner,

without proper notice and a pre-detention hearing unless permissible under an applicable statute or regulation;

(4) Within 48 hours of this Order, Respondents SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(5) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 4th day of March, 2026.

Tana Lin
United States District Judge

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS – 15